

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 02-10-00413-CR**
**NO. 02-10-00414-CR**
**NO. 02-10-00415-CR**
**NO. 02-10-00416-CR**
**NO. 02-10-00417-CR**
**NO. 02-10-00418-CR**
**NO. 02-10-00419-CR**
**NO. 02-10-00420-CR**
**NO. 02-10-00421-CR**
**NO. 02-10-00422-CR**
**NO. 02-10-00423-CR**
**NO. 02-10-00424-CR**
**NO. 02-10-00425-CR**
**NO. 02-10-00426-CR**
**NO. 02-10-00427-CR**

DALE ROY SLAVEN                                         APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---
[1]*See* Tex. R. App. P. 47.4.

## I. Introduction

Appellant Dale Roy Slaven entered open pleas of guilty to eight charges of aggravated robbery, six charges of robbery, and one charge of forgery. The trial court found Appellant guilty on all the charges, accepted his pleas of true to the habitual offender notices, reviewed a presentence investigation report (PSI), and conducted a sentencing hearing. The trial court assessed punishment at sixty years' confinement in the aggravated robbery and robbery cases and twenty years' confinement in the forgery case, all to run concurrently. The trial court sentenced Appellant accordingly.[2]

## II. *Anders v. California*

Appellant's court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion. In the brief, counsel avers that, in his professional opinion, this appeal is frivolous. Counsel's brief and motion meet the requirements of *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967), by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds for appeal.[3] *See Stafford v.*

---

[2]Because Appellant pleaded "true" to the habitual offender notices alleged in each offense, his range of punishment for the aggravated and nonaggravated robberies was twenty-five to ninety-nine years or life. *See* Tex. Penal Code Ann. § 12.42(d) (West 2011). The habitual offender notice raised Appellant's punishment range for his state jail felony forgery charge to two to twenty years' confinement, a second-degree felony. *Id.* § 12.425 (West Supp. 2011).

[3]In the brief, appointed appellate counsel asserted that "[a] potential source of error may have been the voluntariness of Appellant's guilty plea[s]."

*State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays v. State*, 904 S.W.2d 920, 922–23 (Tex. App.—Fort Worth 1995, no pet.).  Appellant filed a pro se brief in response, the State filed a reply, and Appellant filed rebuttal and supplemental briefs.

Once an appellant's court-appointed counsel files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of *Anders*, we are obligated to undertake an independent examination of the record to see if there is any arguable ground that may be raised on his behalf.  *See Stafford*, 813 S.W.2d at 511; *Mays*, 904 S.W.2d at 923.  Only then may we grant counsel's motion to withdraw.  *See Penson v. Ohio*, 488 U.S. 75, 82–83, 109 S. Ct. 346, 351 (1988).  We will briefly explain why Appellant's six arguments lack arguable merit.  *See Garner v. State*, 300 S.W.3d 763, 764 (Tex. Crim. App. 2009) ("[W]hen a court of appeals finds no issues of arguable merit in an *Anders* brief, it may explain why the issues have no arguable merit."); *Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005).

## III. Possible Issues[4]

### A. Completeness of the Record

Appellant claimed in his initial pro se *Anders* brief that the appellate record was incomplete. At the State's request, this court abated these appeals to the trial court to determine whether the reporter's record was complete. At the time of the abatement hearing in January 2012, Appellant's August 2, 2010 plea hearing had been transcribed (and filed in this court as of November 9, 2011) and was part of the reporter's record.[5] Appellant complained to the trial court, however, that he was "brought out twice before" the court the morning of the August 2, 2010 plea hearing and that the "very first portion" of the plea hearing was missing. The trial court stated, "I think what you're asking for is something that wasn't even on the record . . . ." The trial court then explained, "[W]e researched and looked for everything that we could possibly have. And the only thing I have is what I've given you." The trial court also issued written findings and conclusions, including that "there are no missing parts of the reporter's records that have been filed in connection with the defendant's criminal appeals"

---

[4]Because Appellant entered open pleas of guilty, our independent review for potential error is limited to potential jurisdictional defects, the voluntariness of Appellant's pleas, error that is not independent of and supports the judgments of guilt, and error occurring after entry of the guilty pleas. *See Monreal v. State*, 99 S.W.3d 615, 620 (Tex. Crim. App. 2003).

[5]The reporter's record in this case also includes the September 17, 2010 sentencing hearing, the November 11, 2010 hearing on "miscellaneous matters," and the January 24, 2012 abatement hearing.

4

and that all reporter's records, clerk's records, and supplements in this case "represent true, accurate, and complete transcriptions of the proceedings before this Court."[6] Giving almost total deference to a trial court's express determination of historical facts, we have no reason to dispute the trial court's determinations. *See Jaynes v. State*, 216 S.W.3d 839, 844 (Tex. App.—Corpus Christi 2006, no pet.). Thus, this argument lacks arguable merit.

## B. Ineffective Assistance of Appellate Counsel

Appellant also argues that his appellate counsel provided ineffective assistance because he reviewed only a partial reporter's record of the proceedings below and, therefore, could not have conducted the full review of the record required by *Anders*. At the abatement hearing Appellant's appellate counsel explained,

> [A]t the time that I filed my brief, I had access to all the clerk's records. I had access to the sentencing hearing and I had access to the PSI. And then as the Court's aware later, the record was supplemented with [Appellant's] August 2nd, 2010, plea hearing.
>
> Now, I've reviewed the August 2nd, 2010 plea hearing on the date that you provided it to [Appellant] . . . And I was specific in looking for anything in the plea hearing that might lead me to believe that [Appellant] — on the record show[ed] that [Appellant's] plea was involuntary. And after reviewing that plea hearing, I couldn't find anything in that plea hearing itself that led me to believe — anything on the record indicating that his hearing was — that his plea was involuntary; therefore, I did not supplement my brief. I didn't file a motion to withdraw the Anders brief, which I would have done if I

---

[6]In light of the trial court's findings and conclusions, the record also does not support Appellant's complaint that his PSI hearing immediately preceding his September 2010 sentencing hearing was transcribed and is missing.

5

would have seen something in any of the documents included in that plea hearing indicating that there was a valid point of appeal.

Thus, it is clear from counsel's response that he reviewed all of the record and determined that there were no arguable grounds for appeal.

In addressing an *Anders* pro se brief, a court of appeals may only (1) determine that the appeal is wholly frivolous and issue an opinion explaining that it has reviewed the record and finds no reversible error or (2) determine that arguable grounds for an appeal exist and remand the cause to the trial court so that new counsel may be appointed to brief the issues. *In re Schulman*, 252 S.W.3d 403, 403 (Tex. Crim. App. 2008); *Bledsoe*, 178 S.W.3d at 826–27. After reviewing the entire record, we determine that appellate counsel did not miss any arguable grounds.[7] *Schulman*, 252 S.W.3d at 409; *cf. Mason v. State*, 65 S.W.3d 120, 120–21 (Tex. App.—Amarillo 2001, no pet.) (striking the *Anders* brief because the appellate record was missing the jury selection portion of the reporter's record).

---

[7]Appellant also refers us to a letter his appellate counsel wrote to him after counsel filed his *Anders* brief, in which he incorrectly stated that this court had granted his motion to withdraw. Appellant queries whether his appellate counsel adequately represented his interests at a subsequent "miscellaneous" hearing and at the abatement hearing, both of which appellate counsel attended and participated in. This claim is not relevant to our *Anders* analysis. *See In re Schulman*, 252 S.W.3d at 409 n.23 (describing appellant's pro se brief as "merely an informal opportunity for the indigent defendant to present what he believes are claims or issues or areas of procedural or substantive concern that arguably deserve a full merits brief by a second attorney") (citing *Bledsoe*, 178 S.W.3d at 827).

## C. Voluntariness of Plea

Appellant additionally asserts that his guilty pleas were involuntary. A guilty plea must be knowingly and voluntarily made or it will be held constitutionally invalid. *See Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970); *Aguirre-Mata v. State*, 125 S.W.3d 473, 474 (Tex. Crim. App. 2003). A record reflecting that a defendant was properly admonished presents a prima facie showing that the guilty plea was entered knowingly and voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Jackson v. State*, 139 S.W.3d 7, 14 (Tex. App.—Fort Worth 2004, pet. ref'd). The burden then shifts to the defendant to establish that, notwithstanding the statutory admonishments, he did not understand the consequences of his plea. *Martinez*, 981 S.W.2d at 197; *Jackson*, 139 S.W.3d at 14.

Here, Appellant signed written plea admonishments, each of which states that he entered his plea knowingly and voluntarily and that he was aware of the consequences of his guilty plea. Appellant signed judicial confessions in each case. In person and in open court Appellant pleaded guilty to all fifteen charges, and he affirmed that he was pleading guilty because he was guilty. Although the record presents a prima facie showing that Appellant knowingly and voluntarily entered his pleas, Appellant asserts that his pleas were obtained through coercion and intimidation and were therefore involuntary. Appellant's specific complaint is that he was not aware that the State's forty-year offer was available when he entered open pleas of guilty (with no punishment recommendations). At

7

Appellant's plea hearing, however, the trial court specifically advised Appellant that "[t]here are no plea agreements. It is an open plea. The State is not making you any offer on this." Likewise, Appellant's counsel elicited the following testimony from Appellant:

> Q. [Defense Counsel]: And you have already been admonished on a previous occasion that there was a plea bargain offer made in this case that you rejected?
>
> A. [Appellant]: Yes, sir.
>
> Q. And by entering an open plea today, as the Judge said, you have no guarantee that you are going to do any better and there is a possibility that you could do considerably worse?
>
> A. Yes, sir, I understand.
>
> Q. At any point during this process, has — do you feel like there has been any miscommunication between you and I regarding this process, your right to a trial, and what would be the prudent way for you [to] proceed?
>
> A. No, I haven't.

Additionally, Appellant raised, and the trial court addressed, this issue at the abatement hearing. The trial court entered the following related findings and conclusions afterward:

> The defendant contends his trial counsel failed to notify the defendant of a plea offer of 40 years that was made by the State at the August 2, 2010, plea hearing. No such plea offer was made by the State on August 2, 2010. Instead, the State's previous plea offer of [a] 40 year sentence[] had expired in May of 2010. The plea paperwork used [i]n connection with the defendant's August 2, 2010, plea does have the number "40" scratched out. However, this reflects the parties' decision to "recycle" previously completed (and unused) paperwork. The deletion of the number "40" from the plea paperwork was not intended by the State to reflect a plea offer of 40

8

years' imprisonment being made available to the defendant on August 2, 2010.

Thus, Appellant's complaint regarding this issue has no arguable merit.

Appellant additionally asserts that his pleas were involuntary because "his mental compet[e]nce to enter the plea[s] [was] questionable." Appellant asserts (and the PSI indicates) that Appellant has previously been diagnosed with mood disorder, schizophrenia, anti-social personality disorder, depressive disorder, and cocaine dependence. Appellant asserts that it is clear from the record that he has a long history of psychiatric issues as well as several instances of severe head trauma.

A person is incompetent to stand trial if the person does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him. Tex. Code Crim. Proc. Ann. art. 46B.003(a) (West 2006). A court must conduct a competency inquiry only if there is a bona fide doubt in the judge's mind as to the defendant's competence. *Alcott v. State*, 51 S.W.3d 596, 601 (Tex. Crim. App. 2001). A bona fide doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009).

Here, Appellant and his counsel both answered affirmatively that Appellant was competent to enter his guilty pleas. When the trial court stated its

understanding that "there were some MHMR issues involved," Appellant stated that he was on his medication and that he understood all of the circumstances concerning these pleas. Based on his observations and Appellant's and counsel's answers, the trial court found Appellant competent to enter his guilty pleas. At the punishment hearing, Appellant addressed the court and asked for leniency in a four-page colloquy in the reporter's record.

Appellant's mental health diagnoses would implicate his competence at the time of this guilty pleas only if they impacted his present ability to consult with his counsel with a reasonable degree of rational understanding and his rational and factual understanding of the proceedings again him. *See* Tex. Code Crim. Proc. Ann. art 46B.003(a); *Hobbs v. State*, 359 S.W.3d 919, 925 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We find nothing in the record that would raise a bona fide doubt as to Appellant's competence at the time of his guilty pleas. *See id*. ("[A]ppellant's statements at the plea hearing about his medication and mental illness, which were responsive and articulate, do not reflect an inability to consult with his attorney or a lack of understanding of the proceedings against him.").

## D. Presentence Report and Gang Affiliation

Appellant further contends that the presentence investigation report was not conducted thoroughly or accurately and led to a significantly higher sentence. Appellant contends that the PSI was inaccurate in reciting that he acknowledged "affiliation" with the Aryan Brotherhood while inside prison. He also contends that the PSI misreported that he sustained a head injury in 1990, when he actually

10

sustained it in 2006, and that the proximity in time of his injury to his 2009 crimes may have had some mitigating influence on his sentencing. Appellant contends that he was not allowed adequate access to the PSI, nor time to consult with his counsel to formulate an objection to the incorrect information. He contends that if he had been given adequate time and assistance of counsel, the trial court would have given him a lesser sentence.

"Unless waived by the defendant, at least 48 hours before sentencing a defendant, the judge shall permit the defendant or his counsel to read the presentence report." Tex. Code Crim. Proc. Ann. art. 42.12, § 9(d) (West Supp. 2011). "The judge shall allow the defendant or his attorney to comment on a presentence investigation . . . and, with the approval of the judge, introduce testimony or other information alleging a factual inaccuracy in the investigation or report." *Id.* § 9(e).

At the conclusion of Appellant's guilty pleas, the trial court stated, "We are going to have the presentence investigation report prepared as expediently as possible. After I receive a copy of it, I'll have your lawyer to have a copy of it and the State have a copy of it and I'll bring you back so he can review it with you and I'll hear any punishment evidence that he wishes to present." At the punishment hearing, the State asked the trial court to admit a copy of the PSI into the record for all purposes, Appellant's counsel stated that he had no objection, and the trial court entered the exhibit. Appellant contends that his counsel "may have had adequate time to review" the PSI, but that he (Appellant) "was not given this

11

opportunity" and that "the short amount of time he was allowed," he was without counsel. We note that Appellant's complaint that he did not have sufficient time to review the PSI is forfeited because it was not made to the trial court by a timely objection. *See* Tex. R. App. P. 33.1. Even disregarding forfeiture, however, this complaint lacks arguable merit. *See Torrance v. State*, 59 S.W.3d 275, 277 (Tex. App.—Fort Worth 2001, pet. ref'd.) ("We find no case law supporting Appellant's claim that he was personally entitled to read the PSI in order to instruct his attorney to make specific objections.").

Regarding Appellant's complaint that the trial court's sentencing was based on inaccurate information in his PSI, the defendant bears the burden to point out any material inaccuracy in the PSI to the trial court at the time of the sentencing hearing. *See Garcia v. State*, 930 S.W.2d 621, 623–24 (Tex. App.—Tyler 1996, no pet.). The appellant bears the burden on appeal of showing that the trial court relied on inaccurate information in determining his sentence. *Id.* Although Appellant's counsel did not object on the record to inaccuracies in the PSI (and in fact stated he had no objection to it being introduced as an exhibit), Appellant asserts that he preserved error on this issue by telling the trial court at the sentencing hearing that, "I have hung out, yes, with Aryan Brotherhood. I have never joined. I've hung out with them because in prison, when you're a 17– or 18–year–old kid out of the suburbs on a prison unit like B21 in the '80s, you ain't got no choice. I signed. I'm not say[ing] that's an excuse for what I did when I got out. Okay. But I did what I had to survive in there." Appellant also

12

stated, "I'm not a racist. I don't want that to figure in your decision." Contrary to Appellant's argument, his testimony establishes the accuracy of the PSI; that is, that he affiliated with the Aryan Brotherhood while in prison. In any event, the record demonstrates that Appellant was not harmed by any alleged inaccuracies about his affiliation with the Aryan Brotherhood while in prison. *See* Tex. R. App. P. 44.2(b) (stating that nonconstitutional errors that do not affect substantial rights must be disregarded). Indeed, the trial court stated to Appellant at the sentencing hearing, "[Y]ou brought up the fact that while you were in the penitentiary, you associated yourself with the Aryan Brotherhood and you didn't want me to take that into consideration, and I don't. All I take into consideration [are] the crime[s] . . . ."[8]

Regarding Appellant's argument that the PSI incorrectly stated that he sustained a head injury in 1990 rather than in 2006, he forfeited this complaint because he failed to alert the trial court to the alleged inaccuracy. *See* Tex. R. App. P. 33.1. Even disregarding forfeiture, however, there is no indication that the trial court would have given Appellant a lesser sentence if the PSI had stated that Appellant sustained the head injury in 2006. Indeed, the PSI states that there appears to be a direct correlation between his criminal activity and substance abuse. Likewise, in testifying in the punishment phase about his culpability in the 2009 crimes, Appellant did not assert that a 2006 head injury

---

[8]For the same reasons, Appellant was not harmed by the State's questioning of Appellant's mother about what the State characterized as his Aryan Brotherhood tattoos.

13

mitigated his culpability; instead, he testified, "I have got a drug addiction. . . . And when I was out there doing what I was doing, I was so far strung out and in my drugs." Further, in assessing Appellant's punishment, the trial court emphasized that Appellant's use of drugs while committing his offenses was "frightening" because "[i]f you're on drugs you know what you're doing, but you don't care what you're doing because drugs take over." In fact, the trial court explicitly explained the basis for the sentences imposed: "All I take into consideration is the crime itself, the pain and suffering that it's caused the victims, because the victims are as important as the person who is standing up here to be sentenced. I have to take their lives into consideration just like I take your life into consideration." Thus, the record demonstrates that the alleged inaccuracies did not harm Appellant because the trial court did not consider them.[9] Tex. R. App. P. 44.2(b). Thus, Appellant's arguments regarding this issue have no arguable merit.

## IV. Conclusion

We have carefully reviewed the record, counsel's brief, and Appellant's and the State's filings. The issues raised in Appellant's appellate filings have no arguable merit. *See Bledsoe*, 178 S.W.3d at 827. We agree with counsel that

---

[9]Appellant's speculative argument—that the trial court would have indirectly considered the alleged inaccurate information if it based its sentencing in part on the portion of the PSI, which provides in part that Appellant's scores on the Wisconsin Risk / Needs Assessment indicated maximum risk and needs—is not supported by the record.

the appeal is wholly frivolous and without merit.  Accordingly, we grant the motion to withdraw and affirm the trial court's judgments.[10]

PER CURIAM

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 31, 2012

---

[10]Notwithstanding that the motion to withdraw has been granted, appellate counsel must send Appellant a copy of our decision and notify him of his right to file a pro se petition for discretionary review in the Texas Court of Criminal Appeals.  *See* Tex. R. App. P. 48.4; *Ex parte Owens*, 206 S.W.3d 670, 673–74 (Tex. Crim. App. 2006).